UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICKA SAVAGE,

                         Plaintiff,                                  Case Number 09-13447

v.                                                                      Honorable David M. Lawson

CITY OF PONTIAC, EMERGENCY FINANCIAL
MANAGER FRED LEEB, individually and in his
official capacity, and LARRY MARSHALL,
individually and in his official capacity,

                         Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANTS' MOTIONS
TO DISMISS, AND SCHEDULING CASE MANAGEMENT CONFERENCE**

    Plaintiff Erika Savage filed the present lawsuit after she was fired from her position as the City of Pontiac's Legislative Auditor by defendant Fred Leeb, who was appointed by action of Michigan's governor as Pontiac's emergency financial manager. Savage was hired by action of the city council for a fixed term of employment that expressly could not be terminated except for defined cause. She contends that her termination violated the Due Process Clause and breached her employment contract. The defendants contend that they had a right to fire the plaintiff without regard to cause under powers granted by the Local Government Fiscal Responsibility Act (LGFRA), Mich. Comp. Laws § 141.1201 *et seq*, and even if that is not the case, the individual defendants are entitled to qualified immunity. Both sides have filed dispositive motions, which were argued in open court on June 2, 2010. The Court concludes that the plaintiff had a property right in her "just cause" employment contract that could not be taken from her without due process of law; she was not afforded adequate process before she was fired; and the plaintiff's right to procedural due process was clearly established at the time. Therefore, the Court will deny the defendants' motions

to dismiss, construed as motions for summary judgment, and grant the plaintiff's motion for summary judgment on liability.

I.

It appears from the pleadings and motion papers that the key facts are not in dispute. Savage was hired as the Legislative Auditor by the Pontiac City Council via Resolution 06-624 in 2006. The Legislative Auditor is a full-time position within Pontiac city government, responsible for analyzing pending issues before the City Council and advising Council members on the different policy choices they encounter. Savage's employment duties began on December 4, 2006 and initially were to terminate on December 4, 2009. The City Council passed a second resolution on June 19, 2009 extending her term until December 4, 2010 in accordance with the terms of the City Charter.

Pontiac's Home Rule Charter ("City Charter"), effective May 3, 1982, governs the functions and powers of the Pontiac City Council. Under section 3.301, the City Council is authorized "by ordinance, [to] provide for the office of Legislative Auditor and shall, by not less than five (5) affirmative votes appoint the Auditor for a term of not less than four (4) years." Compl., Ex. 1, City Charter, at ¶ 3.301. This section also states that "[t]he Auditor may be removed by not less than five (5) Council members only for cause." *Ibid.* The City Charter defines "cause" as "lack of qualifications, incompetency, neglect of duties, misconduct, conviction of a felony, or a violation of this charter or any job-related ordinance, rule or regulation." *Id.* at ¶ 6.109. The City Charter grants procedural rights prior to termination as well, stating that "[a]n appointee may not be removed under this subsection without an opportunity for a public hearing before the appointing authority. A copy of the charges shall be furnished at least 10 days in advance of the hearing." *Ibid.*

The plaintiff alleges that the Charter and these resolutions created an express employment contract between the City Council and herself that prevented her discharge without just cause, and requires a due process hearing in advance of termination. There is no dispute that cause was not established or even offered as a reason for termination, and there was no prior notice or opportunity for Savage to respond.

The defendants contend that Savage's position was eliminated because of the City's dire financial straits, which resulted in the appointment of Fred Leeb as the Emergency Financial Manager (EFM) under the LGFRA. On February 20, 2009, the Governor of Michigan determined that a financial emergency existed in the City of Pontiac and authorized the Local Emergency Financial Assistance Loan Board to appoint an EFM. Defendant Fred Leeb was appointed as the EFM for the City of Pontiac on March 19, 2009 by order of the Local Emergency Financial Assistance Loan Board.

On June 18, 2009, Leeb notified Savage via a letter that he was eliminating her position as Legislative Auditor, citing the city's financial emergency and his power under the LGFRA. The letter, sent on the City of Pontiac's Department of Human Resources letterhead, stated in full:

> Due to the financial emergency that exists within the City of Pontiac I am faced with the difficult task of making major adjustments to the operations of the municipality. It is therefore with great regret that I must inform you that your position as Legislative Auditor will be eliminated. You will be compensated through the end of business on June 26th, 2009 however; [sic] you are being immediately removed from active employment.
> An exit interview will be scheduled for you in the Human Resources Department at which time you will also receive information regarding benefits that you may be entitled to and your final payout for fringe benefits that you have accrued.
> Please accept my appreciation for the contribution you have made to the City of Pontiac and the Growth Group. I would like to extend to you my best wishes for the future. You may contact Human Resources at (248) 758-3252 if you have any questions.

>	Sincerely,
>	Fred Leeb,
>	Emergency Financial Manager
>	cc: Human Resources

Pontiac/Marshall Mot. to Dismiss, Ex. 3. The plaintiff claims that Larry Marshall, Pontiac's human resources and labor relations director, was also involved in the decision to terminate her.

The plaintiff was escorted from the premises on the same day that she received the letter by individuals other than those responsible for her termination. She alleges that she was not provided an explanation as to why she was terminated, granted an opportunity to collect her personal effects, or afforded her rights to notice and a hearing. Various media outlets allegedly covered her removal from the building, which caused the plaintiff to suffer humiliation, she contends. The plaintiff says that she has been without employment since June 18, 2009.

On August 31, 2009, the plaintiff filed a complaint against the City of Pontiac, Fred Leeb, and Larry Marshall, both individually and in their official capacities. She filed an amended complaint on September 4, 2009, which includes claims for violations of federal and state constitutional due process protections and breach of contract. Defendants Pontiac and Marshall filed a joint motion to dismiss, and defendant Leeb filed a motion to dismiss of his own. The plaintiff filed a motion for summary judgment.

II.

The defendants' motions are styled motions to dismiss; however, they have attached to their motion papers affidavits and documentary evidence that are not part of the pleadings. Because the parties have had notice and an opportunity to present their materials in support of their positions, the Court can and does convert the defendants' motions to summary judgment motions under Rule 56. *See* Fed. R. Civ. P. 12(d) (stating that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters

outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties shall be given reasonable opportunity to present all material that is pertinent to the motion."); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 571 (6th Cir. 2001) (stating that Rule 12(b) "empowers a district court to grant summary judgment *sua sponte* where the court is presented with materials outside the pleadings. Whether a district court must provide notice that it intends to convert a motion to dismiss into a motion for summary judgment depends on the facts and circumstances of each case").

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where the facts are mostly settled, and the question before the court is purely a legal one, as here, the summary judgment procedure is well suited for resolution of the case. *See Cincom Systems, Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

A.

The plaintiff brought her action under 42 U.S.C. § 1983, the Michigan constitution, and the common law of contracts. The claim under the Michigan constitution must fail as a matter of law, because the Michigan Supreme Court has held that the state constitution does not provide remedies to enforce the rights created therein. *Jones v. Powell*, 462 Mich. 329, 612 N.W.2d 423 (2000). Section 1983, although not itself a source of substantive rights, provides a vehicle for vindicating rights provided by the *United States* Constitution and their laws only, and does not apply to state law

claims. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990). Therefore, count II of the complaint must be dismissed.

B.

To recover under section 1983, the plaintiff must plead and prove two elements: (1) she suffered a deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc.* 330 F.3d 899, 902 (6th Cir. 2003). Municipal employees qualify as state actors because they exercise the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed by the authority of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). There can be no dispute that in making the employment decision in this case, defendants Leeb and Marshall were acting under color of law. Municipalities, such as defendant Pontiac, are considered "persons" within the meaning of section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), and, because they derive their power from the state, are considered amenable to suit as state actors, *see Hughes v. Region VII Area Agency on Aging*, 423 F. Supp. 2d 708, 716-18 (E.D. Mich. 2006), *aff'd in part* 542 F.3d 169 (6th Cir. 2008). And although municipal liability will attach only where the plaintiff establishes that the municipality promoted a "policy or custom" that was the "moving force" behind the deprivation of the plaintiff's rights, *Monell*, 436 U.S. at 694; *Polk County v. Dodson*, 454 U.S. 312, 326 (1981); *see also Doe v. Claiborne County, Tenn. ex rel. Claiborne County Bd. of Educ.*, 103 F.3d 495, 507-08 (6th Cir. 1996), municipal "policy" is established when the challenged "actions [are] taken by officials with final decision-making authority," which defendant Leeb was. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

The federal right of which the plaintiff alleges she was deprived is the right to due process of law under the Fourteenth Amendment. In order to establish a procedural due process violation, the plaintiff must show that (1) she has a life, liberty, or property interest protected by the Constitution; (2) she was deprived of that interest by a state actor; and (3) she was not afforded timely and adequate process under law. *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). The defendants insist that the plaintiff had no property interest in her continued employment, and therefore her due process claim must fail.

"Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (internal quotation marks omitted)). To have a property interest, "a person clearly must have more than an abstract need or desire for [a certain benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Federal courts have recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1986); *Relford v. Lexington-Fayette Urban County Gov't*, 390 F.3d 452, 460 (6th Cir. 2004) ("Under state law, government and civil service employees may have a property right in their continued employment"). Generally, a showing that a civil servant may be fired only for cause by operation of state contract law, statute, or administrative rules and regulations is sufficient establish a right to a pretermination hearing. *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004).

The defendants do not dispute that the plaintiff's employment terms as set forth in the City Council's resolution require cause to terminate her. Instead, they contend that the LGFRA extinguished any property interest the plaintiff may have had once the financial emergency was declared, and the emergency financial manager was not limited to removal only for cause. The defendants' argument is based on the statutory language.

The Michigan Local Government Fiscal Responsibility Act, Mich. Comp. Laws § 141.1201 *et seq.*, passed in 1990, permits the governor to appoint an emergency financial manager for a local governing body if she determines, based on a committee review and a hearing, that a financial emergency exists in the municipality. *See* Mich. Comp. Laws §§ 141.1212-141.1218. The emergency financial manager is responsible for developing and "regularly reexamin[ing]" with the governing body a written financial plan to meet the municipality's financial crisis. *Id.* § 141.1220. He also has the power to "issue to the appropriate officials or employees of the local government the orders the manager considers necessary to accomplish the purposes of this act. . . . An order issued under this section is binding on the local officials or employees to whom it is issued." *Id.* § 141.1219. The statute does not elaborate on the types of orders the emergency financial manager may issue.

The LGFRA was amended in 2002 to add section 141.1221, which enlarges and enumerates the emergency financial manager's powers. Pub. Act. 408, S.B. No. 1064, 91st Leg., eff. Jun. 3, 2002, 2002 Mich. Legis. Serv. P.A. 408. (The language, but not the substance, of section 141.1221 was amended in 2004, Pub. Act. 282, S.B. No. 771, 92nd Legis., eff. Jan. 8, 2004, 2003 Mich. Legis. Serv. P.A. 282 (S.B. 771)). Under this section,

> An emergency financial manager may take 1 or more of the following additional actions with respect to a unit of local government in which a financial emergency has been determined to exist: . . .
> (f) Make, approve, or disapprove any appropriation, contract, expenditure, or loan, the creation of any new position, or the filling of any vacancy in a permanent position by any appointing authority.
>  . . .
> (h) Exercise all of the authority of the unit of local government to renegotiate existing labor contracts and act as an agent of the unit of local government in collective bargaining with employees or representatives and approve any contract or agreement.
> (I) Notwithstanding the provisions of any charter to the contrary, consolidate departments of the unit of local government or transfer functions from 1 department to another and to appoint, supervise, and, at his or her discretion, remove heads of departments other than elected officials, the clerk of the unit of local government, and any ombudsman position in the unit of local government.
>  . . .
> (k) Require compliance with the orders of the emergency financial manager by court action if necessary.
>  . . .
> (p) Exercise the authority and responsibilities of the chief administrative officer and governing body concerning the adoption, amendment, and enforcement of ordinances or resolutions affecting the financial condition of the unit of local government as provided in the following acts:
>> (I) The home rule city act, 1909 PA 279, MCL 117.1 to 117.38.
>  . . .
> (q) Reduce, suspend, or eliminate the salary, or other compensation of the chief administrative officer and members of the governing body of the unit of local government during the financial emergency. . . . .

Mich. Comp. Laws § 141.1221(1).

The defendants contend that the statutory authorization to EFMs to "disapprove any . . . contract" and "remove heads of departments" allowed defendant Leeb to ignore the cause and procedural requirements when terminating the plaintiff. The defendants also point to the order appointing the EFM, which states that it converts all city employees not covered by collective bargaining agreements to at-will employees. The Court finds none of these arguments persuasive.

As an initial matter, there is no provision in the statute that allows an EFM to accept or reject existing or executory contracts. The language in section 141.1221(1)(f) that authorizes the EFM to "[m]ake, approve, or disapprove any appropriation, contract, expenditure, or loan" cannot be fairly read that way, since the context of the subsection plainly refers to new or prospective actions and not past or existing financial obligations of the troubled municipality. For instance, among the list of authorized actions is the approval of "the creation of any *new* position," and "the *filling* of any vacancy." *Ibid.* (emphasis added). There is no stated authorization to revoke existing appointments or ignore contracts in force. The list of enumerated powers is forward-looking, and the grant of power to "disapprove" contracts must be construed that way. *See United States v. Mabry*, 518 F.3d 442, 447 (6th Cir. 2008) (stating that "[u]nder *ejusdem generis*, we attribute 'the same characteristic of discreteness shared by all the preceding items' to the term in question" (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004))); *Canton Police Benevolent Ass'n of Canton v. United States*, 844 F.2d 1231, 1236 (6th Cir. 1988) (under the "time-honored rule of *ejusdem generis*, . . . a general word in a statute takes its character from the specific words with which it appears"). Where the intention to extinguish existing rights is not clearly expressed, a court ought not impute that intention to a legislature. *Greene v. United States*, 376 U.S. 149, 160 (1964) ("[T]he first rule of construction is that legislation must be addressed to the future, not to the past . . . [and] a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'").

The defendants would read section 141.1221(1)(f) as equivalent to the bankruptcy provision that confers an analogous power upon a bankruptcy trustee. *See* 11 U.S.C. § 365(a) ("Except as

provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."). No Michigan case supports that interpretation. To the contrary, the only state cases that speak to the subject are limited to the authority of an EFM to reduce salaries of local *elected* officials, which the plaintiff is not. *See Attorney Gen. v. Flint City Council*, 269 Mich. App. 209, 713 N.W.2d 782 (2005) (construing Mich. Comp. Laws § 141.1221(1)(q)); *Porter v. City of Highland Park*, No. 263470, 2006 WL 1479909 (Mich. Ct. App. May 30, 2006) (same).

Moreover, the legislative history of the amendment suggests a conclusion contrary to the defendants' argument. The House Legislative Analysis Section's report entitled "Emergency Fiscal Financial Managers for Municipalities – Senate Bill 771, First Analysis," dated December 9, 2003 (available at http://www.legislature.mi.gov/documents/2003-2004/billanalysis/House/pdf/2003-HLA-0771-a.pdf (last visited Sept. 30, 2010)), notes that "[t]he law confers the combined power of mayor and city council upon financial managers, allowing them to unilaterally take action . . . to balance the books in troubled local governments." *Id.* at 1. The bill under consideration "would amend the Local Government Fiscal Responsibility Act to give an emergency financial manager additional powers, including the authority to reduce, suspend, or eliminate the salary or other compensation of members of the governing body of a local unit of government during a financial emergency," in line with the actions taken by emergency financial managers in Flint, Hamtramck, and Highland Park. *Id.* at 1-2. "The bill specifies that the manager could exercise the authority and responsibilities of the local unit's chief administrative officer and governing body concerning the adoption, amendment, and enforcement of ordinances or resolutions affecting the financial condition of the local unit as provided in the statutes cited." *Id.* at 2. The Senate Fiscal

Agency's Bill Analysis of Public Act 282 of 2003 (Senate Bill 771), dated March 15, 2004 (available at http://www.legislature.mi.gov/documents/2003-2004/billanalysis/Senate/pdf/2003-SFA-0771-S.pdf (last visited Sept. 30, 2010)) repeats this language almost verbatim. *Id.* at 1. However, this report also notes that the bill specifically prevents the emergency financial manager from "impair[ing] vested retirement benefits," which represents some limit on the EFM's authority with respect to employment decisions. *Ibid.*

In April 2010, the Citizens Research Council of Michigan (CRC) published a report entitled "Financial Emergencies in Michigan Local Governments, Report 362" (available at http://www.crcmich.org/PUBLICAT/2010s/2010/rpt362.pdf (last visited Sept. 30, 2010)). According to the CRC, "[a]n emergency financial manager assumes the power and duties of the chief executive officer and legislative body, and may reorganize the government structure and renegotiate contracts," *id.* at iii, 3, "but may not abrogate contracts," *id.* at 7. The report further notes that:

> There is no prohibition in any Michigan statute on the voluntary renegotiation of local government contracts. There is, however, no way to amend any Michigan statute to allow abrogation of local government contracts. Therefore, if the critical problem facing a local government is the inability to afford contractually obligated pay and benefits, unions refuse to make concessions, and no further layoffs may reasonably be made without endangering public health and welfare, no remedy for that problem is possible outside of bankruptcy.

*Id.* at 15; *see also id.* at 18 ("However, if the resolution of the emergency requires abrogation of contracts, only bankruptcy will provide the necessary authority."). Although not formally a part of the legislative history, this recent report provides the most clear statement (after two decades of experimenting with and implementing the LGFRA) concerning the authority, or lack thereof, of the

emergency financial manager to avoid existing contracts. Consistent with those observations, and for the other reasons stated above, the Court concludes that an EFM has no such power.

The Court does not believe that subsection 141.1221(1)(I), which allows an EFM to consolidate municipal departments and remove department heads, applies to the plaintiff, either. By its terms, that section extends only to "heads of departments other than elected officials, the clerk of the unit of local government, and any ombudsman position in the unit of local government." Mich. Comp. Laws § 141.1221(1)(I). Presumably, that reference denotes the departments authorized and established by law.

Michigan's Home Rule City Act confers upon a municipality the power to establish "any department that it may deem necessary for the general welfare of the city and for the separate incorporation thereof . . . ." Mich. Comp. Laws § 117.4j(1). Under that authority, Article IV of the Pontiac City Charter describes the Executive Branch and establishes the Office of the Mayor, the Law Department, the Finance Department, the Police Department, the Fire Department, other Executive Branch departments, and the Arts Commission. Pl.'s Mot. Summ. J., Ex. 1, City Charter. Article III, describing the Legislative Branch, says nothing about the creation of departments. In Chapter 6 of Article IV, describing the Remainder of the Executive Branch, section 4.601 states that "[o]ther departments, not created by this charter, for performance of executive and administrative functions may be created in the executive branch by ordinance, consistent with Sections 4.106-4.109 of this charter," which provide for appointment by the Mayor and approval by City Council, and delineate the duties of department directors to hire, fire, supervise, and assign duties to employees of the department. A "Director" is defined in the city Charter as "the administrative head of a

department, notwithstanding that another title may, by this charter or ordinance, be given to that position." *Id.* § 6.206(1).

There is no dispute that the plaintiff was appointed to her job as Legislative Auditor by the City Council and that she had some supervisory authority. She therefore fits neatly into the definition of an "appointee," which the City Charter defines as "persons either (I) serving on boards and commissions or (ii) holding upper level positions included in the management of City government and outside any civil service system or collective bargaining unit." *Id.* § 6.206(2)(a). As such, she falls within the scope of "management." *See id.* § 6.102 (stating that "[m]anagement consists of elective officers and appointees as defined in Section 6.206"). The defendants argue that the Court therefore should consider the plaintiff's function as equating to that of a department head, but they have cited no authority that allows the Court to disregard the express definitions contained in the City Charter. There is no part of the LGFRA that authorizes such action, and the EFM does not have any inherent power to do so. In fact, "appointee" is defined in the same section of the Charter that defines "employee." *See id.* § 6.206(1)-(2). As noted earlier "Director" is defined elsewhere. *See id.* § 6.206(1).

The inescapable conclusion required by the plain language of LGFRA and the City Charter is that the plaintiff was an appointed employee, nothing more. According to the appointing ordinance, her term of employment was fixed at four years, and she could be fired only for cause. Nothing in the LGFRA changes that, nor does the statute authorize the EFM to change that.

The defendants also argue that the order of the Local Emergency Financial Assistance Loan Board that appointed defendant Leeb converted all Pontiac city government employees to at-will status, so the plaintiff had no property interest that required a pretermination procedure. A

moment's reflection reveals the fallacy of that argument. The property right granted to the plaintiff when she was hired as Legislative Auditor was the right to employment *for a fixed term*, to be interrupted only for cause. The Supreme Court has explained that "the significance of the private interest in retaining employment cannot be gainsaid." *Loudermill*, 470 U.S. at 543. The protected property right was the "interest in the tenured nature of the employment itself." *See Ramsey v. Bd. of Educ. of Whitley County, Ky.*, 844 F.2d 1268, 1274 (6th Cir. 1988). Consequently, the order purporting to extinguish the plaintiff's right to tenure in her position, converting her fixed-term contract to an at-will contract, was merely a step along the way to her termination and amounted to a deprivation of due process. *See Leary v. Daeschner*, 228 F.3d 729, 743 (6th Cir. 2000).

The Court concludes that the record establishes as a matter of law that the plaintiff had a property interest in her continuing employment through December 2010 protected by the United States Constitution, she was deprived of that interest by state actors, and she was not afforded any predeprivation process. The record also conclusively establishes that the deprivation was carried out by defendants Pontiac and Leeb. That is sufficient to establish liability as to these defendants. Defendant Marshall contends that the plaintiff failed to detail specific conduct by him relating to the plaintiff's termination and therefore failed to state a claim against him. However, the plaintiff alleges that Marshall, the director of human relations for the city of Pontiac government, participated in the decision to eliminate the plaintiff's position and in ordering her termination without notice or a hearing. *See* Compl. ¶ 22. Furthermore, the record includes a termination letter from Leeb to the plaintiff, notably on letterhead from the Pontiac City Human Relations department, Marshall's office. Pontiac/Marshall Mot. to Dismiss, Ex. 3, Letter of Termination. This evidence is sufficient

to permit the Court to infer defendant Marshall's liability in the plaintiff's termination, but it does not conclusively establish his liability as a matter of law.

C.

Defendant Leeb argues that he is entitled to statutory immunity under Mich. Comp. Laws § 141.1223, which states that "the emergency financial manager [is] not liable for any obligation of or claim against a local government resulting from actions taken in accordance with the terms of this article." However, that statute cannot protect Leeb from a claim under section 1983. "'Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.'" *Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980) (quoting *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir. 1973)); *see also McPherson v. Kelsey*, 125 F.3d 989, 994-95 (6th Cir. 1997).

Defendants Leeb and Marshall also argue that they are entitled to qualified immunity. Of course, that defense does not apply to the claims against them in their official capacities. A suit against a public official in his official capacity is merely "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). "As qualified immunity protects a public official in his individual capacity from civil damages, such immunity is unavailable to the public entity itself or the official acting in his official capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (citing *Hall v. Tollett*, 128 F.3d 418, 430 (6th Cir. 1997)).

Both these defendants were also sued in their individual capacities. To overcome the qualified immunity defense against the plaintiff's individual capacity claim, the "plaintiff must establish (1) that the defendant violated a 'constitutional right' and (2) that the right 'was clearly established.'" *Leary v. Livingston County*, 528 F.3d 438, 441 (6th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

The Court has found already that the defendants violated a constitutional right when they terminated the plaintiff without affording her any process whatsoever. To determine whether the right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808 (2009). When considering that question, the Supreme Court has observed that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As the Supreme Court explained in *United States v. Lanier*, 520 U.S. 259 (1997):

> In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

*Id.* at 271 (internal citations and quotation marks omitted). *See also Gould v. Symons*, 275 F. Supp. 2d 843, 848 (E.D. Mich. 2003). "The fact that the law may have been unclear, or even hotly disputed, at the margins does not afford state actors immunity from suit where their actions violate

the heartland of the constitutional guarantee, as that guarantee was understood at the time of the violation." *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir. 1997).

*Silberstein v. City of Dayton*, 440 F.3d 306 (6th Cir. 2006), provides some guidance on that question. The case involved a claim by a public employee that her termination without a hearing deprived her of property without due process. The defendants challenged the proper classification of the plaintiff's job position and quibbled over whether her job fell within the category of classified employees that maintained a clearly established right to a hearing; because of this dispute, the defendants argued that "a reasonable person would not know that he or she was violating Silberstein's rights." *Silberstein*, 440 F.3d at 316. The court stated that "[a]t the time of Silberstein's termination in August 2002, Supreme Court precedent had clearly established that a pre-termination hearing is required before terminating an employee who holds a property interest in her employment, and also clearly established that statutes restricting the terms and procedures under which an employee may be terminated create such a property interest." *Ibid.* The *Silberstein* court cited *Loudermill* for this proposition and advanced *Loudermill* one step further to include city charters and ordinances as sufficient rights-granting state actions. *Ibid.*

To resolve the dispute over the plaintiff's job classification, the *Silberstein* court looked at "the plain language of the Charter [and] general understanding and practice" to determine that the plaintiff's position carried a clearly established right and qualified immunity was not available to the defendants. *Id.* at 317. The court noted that evidence of a long-standing general understanding that the employees in the plaintiff's position were entitled to a pre-termination hearing had been considered sufficient to deny qualified immunity in previous cases. *Ibid.* (citing *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 567-68 (6th Cir. 2004)).

The same result obtains here. The just cause and hearing provisions in the City Charter, plus the fixed term of the plaintiff's tenure, establishes "a legitimate claim of entitlement" to continued employment on the plaintiff's part. *Roth*, 408 U.S. at 577. Any reasonable officer would know that termination from that job without some measure of process was unreasonable. The language of the LGFRA does not provide justification for the defendants' actions or cast doubt on the plaintiff's entitlement to a hearing. Only a tortured reading of that law would permit the conclusion that the plaintiff fell within the class of elected officials or department heads that could be terminated by the EFM. Moreover, a reasonable officer in the defendants' positions should know that state law cannot contravene federal rights and a public employee retains these federal rights regardless of the language of the state statute. Qualified immunity, therefore, provides no safe harbor for the defendants.

III.

The Court finds that the plaintiff's claims based on violation of state constitutional law fail as a matter of law. The plaintiff has a constitutionally protected property right in her continued employment, and she was deprived of that right without due process of law. She is entitled to recover from defendants City of Pontiac and Fred Leeb as a matter of law, but fact questions preclude summary judgment in her favor against defendant Marshall. The plaintiff is entitled to partial judgment on liability; she has presented no proof of damages.

Accordingly, it is **ORDERED** that the defendant's motions' to dismiss, construed as motions for summary judgment [dkt #s 11, 12], are **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that count II of the amended complaint is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt #21] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that plaintiff may recover on her theory of liability stated in count I of her amended complaint from defendants City of Pontiac and Fred Leeb in his individual and official capacities.

It is further **ORDERED** that counsel for the parties shall appear for a scheduling conference on **October 25, 2010 at 12:00 p.m.**

                                    s/David M. Lawson
                                    DAVID M. LAWSON
                                    United States District Judge

Dated: September 30, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2010.

                                    s/Teresa Scott-Feijoo
                                    TERESA SCOTT-FEIJOO